LINKSWILER v. SCHNEIDER et al.

(Circuit Court, N. D. Iowa, W. D.   July 3, 1899.)

1. JURISDICTION OF FEDERAL COURTS—SUIT TO DETERMINE RIGHTS IN PUBLIC LANDS.

   A suit to determine conflicting claims to the right of entry of public lands is one arising under the laws of the United States, and a federal court has jurisdiction without regard to the citizenship of the parties.[1]

2. PUBLIC LANDS—RIGHT TO ENTRY—REVIEW OF DECISION OF LAND DEPARTMENT.

   Under Act March 3, 1887 (24 Stat. 556, § 4), which provides that purchasers in good faith from a railroad company of lands which have been erroneously certified or patented under a grant, if citizens of the United States, shall be entitled to such land, and which commits the determination of the question of their good faith to the land department, the finding of such department in favor of the good faith of a purchaser will not be disturbed, unless clearly shown to have been based on an erroneous construction of the law.[2]

3. SAME—RAILROAD GRANTS—RIGHTS OF PURCHASER ON FORFEITURE OF GRANT.

   The fact that, at the time a contract was made for the purchase of land from a railroad company, its road was not completed, and its grant not fully earned, though it was built beyond the point where the land was situated, and that it was subsequently determined that the land purchased did not pass to the company, because it had previously received and disposed of as much in quantity as it had earned, cannot charge the purchaser with knowledge of facts which would, as a matter of law, affect the good faith of his purchase.

On Demurrer to Bill.

A. P. Lowry and C. P. Bowman, for complainant.

E. R. Evans and W. P. Jewett, for defendants.

SHIRAS, District Judge.   The general purpose of the bill herein filed is to obtain a decree adjudging that the complainant is entitled to enter as a homestead, under the laws of the United States, the N. W. ¼ of section 5, township 95 N. of range 42 W. of the fifth P. M., situated in O'Brien county, Iowa; it being averred in the bill that the land department, wrongfully, unlawfully, and against the claim and protest of complainant, issued a patent to the land, under date of August 5, 1898, to the defendant John Schneider.   According to the averments of the bill, these premises formed part of the land granted by congress, under date of May 12, 1864, to the state of Iowa, to aid in the construction of a line of railway from Sioux City to the Minnesota state line, but the title to which ultimately reverted to the United States, by reason of the failure of the Sioux City & St. Paul Railroad Company to fully complete the line to Sioux City; the same having in fact been built from the Minnesota line to Lemars, Iowa, and no further.   Based upon the failure to construct the railway from Lemars to Sioux City, and under the

_____

[1] As to federal questions and jurisdiction of United States courts generally, see note to Bailey v. Mosher, 11 C. C. A. 308.

[2] As to review of decisions of land department, see note to Hartman v. Warren, 22 C. C. A. 38, and Carson City Gold & Silver Min. Co. v. North Star Min. Co., 28 C. C. A. 314.

provisions of the act of congress of March 3, 1887 (24 Stat. 556), the United States filed a bill in this court for the adjustment of the grant, which resulted in a decree in favor of the government (43 Fed. 617); and on appeal to the supreme court the decree was affirmed, under date of October 21, 1895,—the court going very fully into the facts, and setting forth the same in the opinion therein filed. Sioux City & St. P. R. Co. v. U. S., 159 U. S. 349, 16 Sup. Ct. 17. The outcome of this litigation, so far as it affects the land involved in the present controversy, was to finally decide that the railway company and the state of Iowa had not earned the land, and the same therefore reverted to the United States. Thereupon, in 1896, the complainant herein endeavored to make entry thereof as a homestead under the laws of the United States, but his application was finally refused by the land department, after a full hearing upon the facts and the law, on the ground that John Schneider, one of the defendants, had been in the actual and open possession of the premises since 1883, under a purchase made by him of the land from the Sioux City & St. Paul Railway Company, having expended money and labor in the erection of a house and other improvements upon the premises; that he was a purchaser thereof in good faith, and therefore, under the provisions of section 4 of the act of congress of March 3, 1887, was entitled to a preference in the entry of the land. To reverse this decision of the land department the present bill was filed, which sets forth in detail the history of the title to the land, and also the full proceedings had in the land department over the contest between the complainant and the defendant Schneider touching the right of entry of the land as a homestead, and which, as already stated, resulted in favor of Schneider, to whom the patent was issued.

To this bill a demurrer is interposed, and in support of it the contention is made that this court is without jurisdiction, because the suit is between citizens of the same state, and it is not averred in the bill that the premises in dispute exceed in value the sum of $2,000. In the concluding paragraph of the bill it is averred that the value of the land is $8,000, for which sum judgment is prayed, and it therefore sufficiently appears that the amount in controversy exceeds $2,000; and, as the complainant bases his right of action solely on the provisions of the laws of the United States regulating homestead entries upon the public land, it is clear that the controversy is one arising under the laws of the United States, over which this court, under the provisions of the judiciary act of August 13, 1888, has jurisdiction, irrespective of the citizenship of the litigants.

In further support of the demurrer it is contended that the bill is without equity, in that it fails to show any error of law inhering in the action of the land department in overruling the claim of complainant to be allowed to enter the land in dispute as a homestead, and in issuing the patent to the defendant. By section 4 of the act of March 3, 1887 (24 Stat. 556), it is expressly provided that, in the readjustment of the grants under that act, purchasers in good faith from the railway companies of any lands erroneously certified

or patented by the United States shall be entitled to the land so purchased, upon proof of such purchase at the proper land office within such time and under such rules as may be prescribed by the secretary of the interior. Under the authority of this section, the land department heard the contest made by complainant over the right of Schneider to hold the land as a purchaser in good faith from the railway company; found, under the evidence, that he was a purchaser in good faith; and awarded him a patent for the land. It is not charged in the bill that, in carrying on this contest or in making proof therein before the land department, Schneider committed any fraud upon the department; and, therefore, under the settled rule, the complainant, to justify an interference by the court with the decision reached in the land department, must show that some error of law inheres in the decision of the department. Johnson v. Towsley, 13 Wall. 72; Shepley v. Cowan, 91 U. S. 330; Moore v. Robbins, 96 U. S. 530; Quinby v. Conlan, 104 U. S. 420. In the case last cited it is said by the supreme court "that the misconstruction of the law by the officers of the department which will authorize the interference of the court must be clearly manifest, and not alleged upon a possible finding of the facts from the evidence different from that reached by them." Under the provisions of section 4 of the act of 1887, above cited, it cannot be questioned that it was the duty of the department to hear and determine the fact whether Schneider was or not a purchaser in good faith from the railway company; and, if it was found that he was a purchaser in good faith, then it was clearly the duty of the department to issue a patent for the land to him. According to the averments of the bill, the complainant made his application to enter the land in the land office at Des Moines on the 18th day of February, 1896; and it is open to him to claim that his rights are not affected by the adoption of the act of congress of March 2, 1896 (29 Stat. 42), which extends and regulates the time within which suits to vacate and annul unearned grants of land may be brought under the provisions of the act of March 3, 1887, which declares that "no patent to any lands held by a bona fide purchaser shall be vacated or annulled, but the right and title of such purchaser is hereby confirmed." But, admitting this to be true, the adoption of this provision, which is also contained in the act of 1887, clearly demonstrates that congress did not intend that persons who in good faith had bought lands from the railway companies should be deprived thereof through the operation of proceedings brought by the United States to readjust these land grants, and to recover from the companies lands which they had failed to earn. If Schneider was in fact a purchaser of the lands in good faith, then, under the provisions of the act of 1887 and of 1896, he is entitled to the land, not because he did, in law, obtain a good title from the railway company, but because, in good faith, he made the purchase in the belief that he would in due season obtain a valid title. The determination of the question, in this class of cases, of whether a purchaser bought his land in good faith, so largely depends upon the facts proven by the evidence, that it is very questionable whether the decision of the land department in favor of the good faith of a

purchaser can be re-examined by a court. The general rule is that, in the absence of fraud or mistake, the findings of the department upon the matters of fact involved in a contest over entries of the public lands are conclusive, and every reason exists why this rule should be enforced in cases of the class now before the court. It certainly must be held in these cases that the finding of the land department in favor of the good faith of the purchaser will not be disturbed or set aside unless it is clearly shown that the finding was based upon some construction of the law that cannot be sustained.

The location of the land in dispute is within the limit of the grant, and is opposite to the line as constructed between the Minnesota state line and Lemars. The fact that when Schneider made his contract of purchase with the railway company the road had not been built between Lemars and Sioux City, and through the lapse of time the railway company had lost the right to earn the lands which would have become its property had the road from Lemars to Sioux City been constructed in accordance with the terms of the grant, and the further fact that the legislature of Iowa, by an act approved March 16, 1882, had resumed all unearned lands pertaining to this grant, do not show that Schneider was not acting in good faith in contracting with the railway company. Assuming that it must be held that he had knowledge of the fact that the railway company had not completed the line of road from Lemars to Sioux City and had therefore lost the right to the lands it would have earned by the construction of this part of the line, this would not charge him with knowledge of any facts tending to show that the land he was contracting about had not been earned by the company. The question of the total number of acres which the company could hold under the grant and the location thereof was not finally determined until the decision of the supreme court was announced, in 1895, in the case of Sioux City & St. P. R. Co. v. U. S., 159 U. S. 349, 16 Sup. Ct. 17; it being said in the course of the opinion that:

"Under this view, it is unnecessary to inquire whether the particular lands here in dispute should not have been assigned to the company, rather than other lands, containing a like number of acres, that were in fact transferred to it, and which cannot now be recovered by the United States, by reason of their having been disposed of by the company. If the company has received as much in quantity as should have been awarded to it, a court of equity will not recognize its claim to more, in whatever shape the claim is presented."

Thus, it appears that the question of whether the premises in dispute, as a strict matter of law, were not earned by the company, has never been decided; but the right of the company to assert a claim to the O'Brien county lands, including the premises in dispute in this suit, was denied on the ground that, as the company had in fact received in quantity all the lands it had earned, the company would not be heard to assert its legal claim to the lands in question. To charge Schneider with being a purchaser in bad faith, it is necessary to hold that, when he made his purchase from the railway company, he ought to have foreseen the outcome of litigation between the United States and the railway company, which had not then been commenced, and which resulted in a decision which holds, not that

the company did not earn the lands in question, and would not be entitled to them by a strict legal construction of the act of congress making the grant, but that as the company did not build the entire line of road contemplated in the grant, and as it had in fact received the full number of acres it had earned, a court of equity would not permit the company to show that, as a matter of law, it had become entitled to the lands in O'Brien county. There is nothing, therefore, in the matters set forth in the bill and exhibits thereto, which justifies the holding, as a matter of law, that Schneider was not acting in good faith when he contracted with the railway company for the purchase of the land.

But it is further contended on behalf of complainant that because Schneider, after he had made the contract of purchase, entered into a contract with the railway company to the effect that if the supreme court should finally decide adversely to the right of the railway company to hold the lands under the grant, then Schneider would surrender his contract of purchase to the company upon payment to him by the company of all money received from him, this must be held to prove the bad faith of Schneider in originally entering into the contract of purchase. The assertion of such a contention surely shows the straits to which complainant is driven in his effort to make out this charge of bad faith on part of Schneider. This agreement, if it had been fully carried out and performed (which is not charged in the bill), would only have had the effect to settle the question of damages as between the railway company and Schneider, but it would not in any way affect the right of the latter to secure the title of the land from the United States under the provisions of the acts of 1887 and 1896. There is nothing, therefore, to be found in the allegations of the bill which tends to support, as a matter of law, the charge of bad faith alleged against the defendant Schneider in entering into the contract of purchase with the railway company. The evidence shows that, in reliance upon this contract, Schneider has paid to the railway company several hundred dollars,—having bound himself to pay in all the sum of $2,275,—and has spent several hundred dollars, and years of time and labor, in making a home upon the premises, and that he has paid the taxes assessed upon the premises ever since his purchase. These facts not only justify, but demand, the finding that Schneider was and is a purchaser of these premises in good faith, within the meaning of the act of 1887, which declares that the title of such a purchaser must be held good, although that of the railway company may be held invalid and void. It must be kept in mind that this case is not one wherein an actual, subsisting title in one person is sought to be defeated by the assertion of a claim based on a purchase made in good faith for a valuable consideration; that is, a purchase made of an apparent title by one who is ignorant of the existence of an adverse claim. The complainant herein has full knowledge of the facts, and he is seeking, through the forms of law, to secure to himself the lands in question, with all the added value given thereto by the time, money, and labor of the defendant Schneider, on the ground that, as between the defendant and the United States, it must be held that Schneider

was not acting in good faith in making the contract of purchase from the railway company. The question of the good faith of Schneider has been heard and determined by the tribunal upon which the act of 1887 conferred the jurisdiction to settle that question, and there is nothing recited in the bill herein filed which would justify the court in setting aside the conclusion and judgment of the land department upon the issue thus properly submitted to it for decision. The demurrer to the bill must therefore be sustained on the ground that the complainant's case is wholly without law or equity to support it, and the entry ordered is that the demurrer is sustained, and the bill is dismissed on the merits, at the cost of complainant.