### OSTROM v. WOOD.

### RUNGER v. SAME.

(Circuit Court, N. D. Iowa, W. D. August 18, 1905.)

Nos. 197, 198.

1. PUBLIC LANDS—RAILROAD GRANT—BONA FIDE PURCHASERS.

The Legislature of Iowa, having by act March 16, 1882 (Laws 1882, p. 102, c. 107), resumed title to all unearned lands of the grant to the Sioux City & St. Paul Railroad Company, made by Act Cong. May 12, 1864, c. 84, 13 Stat. 72, to the state, and by the state to the company

by Act April 3, 1866 (Laws Iowa 1866, p. 143, c. 134), on account of the default of the company, a purchaser of such lands from the company thereafter could acquire no rights, and is not protected as a bona fide purchaser by section 4 of the adjustment act of March 3, 1887 (24 Stat. 557, c. 376 [U. S. Comp. St. 1901, p. 1596]), as against one who entered the lands under the land laws of the United States, to which the lands were subsequently relinquished by the state. nor is he entitled to purchase such lands from the United States under section 5; the bona fide character of his purchase from the railroad company being as essential under one section as the other.

[Ed. Note.—Bona fide purchasers of public lands, see note to United States v. Detroit Timber & Lumber Co., 67 C. C. A. 13.]

2. SAME—RIGHTS UNDER ADJUSTMENT ACT.

Lands granted by Congress to a state and by the state to a railroad company on condition, and which were afterwards resumed by the state for the failure of the company to comply with such condition and reverted to the United States, are not lands "excepted from the operation of the grant," within the meaning of section 5 of the adjustment act of March 3, 1887 (24 Stat. 557, c. 376 [U. S. Comp. St. 1901, p. 1597]); and a purchaser from the company acquires no right under said section to purchase the lands from the United States.

In Equity. On final hearing.

These suits are two of a number of like kind pending in this court between homestead settlers upon certain of the lands within the limits of the grant by the act of Congress approved May 12, 1864 (13 Stat. 72, c. 84) to the state of Iowa, to aid in the construction of certain railroads in said state, and purchasers from the Sioux City & St. Paul Railroad Company, a company organized to construct one of said railroads, which company claims the land under grant from the state of Iowa for the purpose specified in said act of Congress. The legislation of Congress and of the state of Iowa under which the railroad company claims said lands, and the acts done by it whereby said company and purchasers from it claim the prior right to the land, are stated in Knepper v. Sands, 194 U. S. 476, 24 Sup. Ct. 744, 48 L. Ed. 1083, and Sioux City & St. Paul Railroad Company v. United States, 159 U. S. 349, 16 Sup. Ct. 17, 40 L. Ed. 177, and reference may be made thereto for such legislation and facts. The lands in controversy herein are two 80-acre tracts in section 19, township 95, range 42, in O'Brien county, this state, and, like that involved in. Knepper v. Sands, are a part of the 85,457.40 acres of land there referred to as not having been earned by the railroad company, but to have reverted to the United States, as held in the case of Sioux City & St. Paul Railroad Company v. United States above, which suit involved the question of the right of the railroad company to said lands under said act of Congress and the legislation of Iowa. After that decision the Secretary of the Interior, under date of November 18, 1895, declared the land subject to disposal by the United States, and due notice to that effect was given to the local land office, and by it as directed by the Secretary of the Interior.

The rights of the respective claimants to the lands in controversy are as follows: In the spring of 1888 the complainant Runger entered upon the land claimed by him, being one of the 80-acre tracts above mentioned and then unoccupied, broke about 18 acres thereon, and cultivated the same that year and the next, intending to enter the land as a homestead. In January, 1890, he built a house upon the land, moved into it with his family, and later made other improvements thereon, and has since continued to reside upon the same claiming it as a part of his homestead. March 10, 1896, after the notice that the land was subject to disposal by the United States as above stated, he made application to the local land office to enter the same as a homestead, paid the requisite fee therefor, and submitted his proofs. The fee was accepted by the land office, to be retained pending the final determination of the contests hereinafter mentioned. December 6, 1895, complainant Ostrom made application to the local land office to enter the land claimed by him as a homestead, which was rejected by that

office. In January, 1896, he built a house upon the land, moved into it with his family, and later made further improvements thereon, and has continued to reside upon the land ever since. February 27, 1896, he again made application to enter the tract as a homestead, tendered the requisite fee therefor, and submitted his proofs; the fee being accepted and retained, as in the case of Runger. October 22, 1888, John Wood, ancestor of the present defendant, made a written contract with the Sioux City & St. Paul Railroad Company for the purchase of the land claimed by each of the complainants, agreeing to pay the railroad company therefor $2,160, and has paid upon such contract about $550. Nothing has been paid by him since January, 1890, except certain of the taxes upon the land, which he has paid under an agreement with the railroad company that, if he did not hold the land, all payments made by him thereon would be refunded by the company. After this contract with the railroad company the right of possession to the land between Wood and Runger came into dispute between them, and Wood sought to dispossess Runger by proceedings in the state court, but such proceedings resulted in favor of Runger. In October, 1895, before Ostrom moved upon the land claimed by him, he made an agreement with Wood that, if he (Ostrom) secured the land as a homestead, he would pay Wood $2 an acre for breaking thereon done by Wood, and if he did not secure it he would move off the land. January 15, 1896, Wood made application to the local land office to purchase the land under the adjustment act of Congress of March 3, 1887 (24 Stat. 556, c. 376, [U. S. Comp. St. 1901, p. 1595]), and later filed contests against the homestead applications of complainants, Ostrom and Runger, basing such contests upon his contract of purchase with the railroad company, claiming that he was a good-faith purchaser of the land from the company and that under said act of Congress he had the prior right to the land. The local land office sustained the contention of Wood, and in January, 1897, awarded the land to him under section 4 of said act, and rejected the homestead applications of Ostrom and Runger. From this decision Ostrom and Runger severally appealed to the Commissioner of the General Land Office, who on June 30, 1899, reversed the same, rejected the claim of Wood, and directed that the respective homestead applications of Ostrom and Runger be accepted. From this decision Wood appealed to the Secretary of the Interior, who on March 19, 1900, reversed the decision of the Commissioner of the General Land Office, and awarded to Wood a confirmatory patent of the land, upon the ground that he was a good-faith purchaser thereof from the railroad company, and, under said act of March 3, 1887, had the prior right thereto. A patent for the land was duly issued to said Wood February 27, 1901.

Ostrom and Runger are, and were at the time they entered upon the lands, citizens of the United States and qualified to enter the same as homesteads. March 18, 1901, each brought suit against John Wood to establish his right under his homestead entry to the land claimed by him, and for a decree setting aside the patent thereof to Wood, or that defendant be required to convey the same to them respectively. Pending the suits John Wood has died, and they have been revived against the defendant, Frank Wood, as sole devisee of the land under the will of said John Wood.

M. B. Davis and King & Stearns, for complainants.
W. P. Jewett and W. P. Briggs, for defendant.

REED, District Judge (after stating the facts). The facts in these cases are not distinguishable from those in Knepper v. Sands, 194 U. S. 476, 24 Sup. Ct. 744, 48 L. Ed. 1083, save only that in that case Sands, the homestead settler, was in possession and occupancy of the land at the time Knepper made his contract with the railroad company for the purchase of the same, while in these cases it appears that the complainant Runger entered and did some breaking upon the land claimed by him prior to the purchase of Wood, but did not actually move onto the land within six months thereafter, nor until after Wood's

purchase, and that complainant Ostrom's entry and occupancy were both subsequent to Wood's purchase. Does this difference in the facts except these cases from the rule held in Knepper v. Sands, and require a different determination of them?

In that case two questions were submitted to the Supreme Court, which in substance are: First. In view of the provisions of the act of Congress of May 12, 1864 (13 Stat. 72, c. 84), did the subsequent action of the General Assembly of Iowa and of the Governor of that state (which were fully stated) act as a final adjustment of the grant so far as the Sioux City & St. Paul Railroad Company was concerned, and exempt or except the grant in question from the adjustment act of March 3, 1887 (24 Stat. 556, c. 376 [U. S. Comp. St. 1901, p. 1595])? Second. In view of the terms of the granting act of May 12, 1864, and the subsequent action of the state of·Iowa through its Governor and Legislature (which were fully stated), can Elmira Knepper, the appellant, be esteemed a purchaser in good faith of the land in controversy, within the meaning of.section 4 of the adjustment act of March 3, 1887 (24 Stat. 557, c. 376 [U. S. Comp. St. 1901, p. 1596]), as against John A. Sands, the appellee, who was in the open possession of the land and had made valuable improvements thereon when said purchase (of Knepper) was made?

The court answered the second of the above questions in the negative, and omitted as unnecessary any answer to the first, and in doing so plainly declared that a purchaser of these unearned lands from the Sioux City & St. Paul Railroad Company, after the passage of the act of March 3, 1887, cannot be esteemed a good-faith purchaser, because the company then had no interest in the lands and could not rightfully dispose of or convey them to any one; that by the resumption act of March 16, 1882, of the General Assembly of Iowa (Laws 1882, p. 102, c. 107), all interest or right of the railroad company in or to these lands under the prior acts of the Legislature of that state was extinguished, and the title to the lands thereby absolutely revested in the state; that by the act of March 27, 1884 (Laws 1884, p. 78, c. 71), the state relinquished the title it thus held to the United States, and thereby the title of the latter again became complete, as held in Sioux City & St. Paul Railroad Company v. United States, 159 U. S. 349, 16 Sup. Ct. 17, 40 L. Ed. 177. In that case the court said:

"The lands now in dispute are part of the 85,457.40 acres patented by the United States to Iowa for the use and benefit of the Sioux City Company, but never conveyed by the state to that company. If the company has received as much of the public lands as it was entitled to have on account of constructed road, may not the lands in dispute (the time limited by Congress for the completion of the entire road having passed) be regarded as 'undisposed of,' within the meaning of section 4 of the act of 1864, and may they not, therefore, be claimed by the government as belonging to the United States? According to that section, if the two roads named in it were not completed within 10 years from the several acceptances· of the grant, the lands granted and not patented were to revert to the state 'for the purpose of securing the completion of the said roads within such time, not to exceed 5 years, and upon such terms as the state shall determine.' And the second proviso was to the effect that said lands should not in any manner be disposed of or incumbered, except as the same were patented under the provisions of the act; and, should the state fail to complete said roads within

5 years after the 10 years aforesaid, then the said lands undisposed of as aforesaid shall revert to the United States."

The court then found that the railroad company had received from the state the full amount of lands that it was entitled to have on account of constructed road, and that it was not entitled to any part of the lands in dispute, and quieted the title thereto in the United States.

It is contended, however, that the state had not in fact relinquished to the United States the lands in Dickinson and O'Brien counties at the time of the passage of the act of March 3, 1887, as stated by the Supreme Court, nor at the time of the purchase by Wood from the railroad company, for that, by the second section of the act of March 27, 1884, of the General Assembly of Iowa, the lands in Dickinson and O'Brien counties (the lands in dispute being in O'Brien county) were expressly excepted from the lands relinquished to the United States. But this is not material; for, by the resumption act of 1882, it is expressly declared:

"That all lands and rights to lands granted or intended to be granted to the Sioux City & St. Paul Railroad Company * * * which have not been earned by said railroad company by a compliance with the conditions of said grant, be and the same are hereby absolutely and entirely resumed by the state of Iowa, and that the same be and are absolutely vested in said state as if the same had never been granted to said railroad company."

These lands were thereafter held by the state in trust for the purpose of completing the road, or to be relinquished to the United States; and, if the lands were not in fact relinquished to the United States by the first section of the act of March 27, 1884, that would not affect the right of the state or of the United States to them, and a grantee of the railroad company, after the act of March 16, 1882, and the act of Congress of March 3, 1887, could acquire no rights thereto other than could be acquired by purchase of any other of the public lands from the railroad company.

In the recent case of Lane v. Benner, 198 U. S. 579, 25 Sup. Ct. 801, 49 L. Ed. 1171, the Supreme Court was asked to reconsider its ruling in Knepper v. Sands, upon a somewhat different state of facts, but it declined to do so and reaffirmed without opinion its former ruling. In view of these decisions it seems plain that John Wood cannot be held to have been a good-faith purchaser of this land and entitled to a patent thereto under section 4 of the act of March 3, 1887, though the land at the time of his purchase was unoccupied.

Counsel for defendant contend, however, that, if defendant's title cannot be sustained under section 4 of the act of March 3, 1887, it can and should be sustained under section 5 thereof. That section, so far as material to the question thus presented, is as follows:

"Sec. 5. That where any said company shall have sold to citizens of the United States or to persons who have declared their intention to become such citizens, as a part of its grant, lands not conveyed to or for the use of such company, said lands being the numbered sections prescribed in the grant, and being coterminous with the constructed parts of said road, and where the lands so sold are for any reason excepted from the operation of the grant to said company, it shall be lawful for the bona fide purchaser thereof from said company to make payment to the United States for said lands at the ordinary government price for like lands, and thereupon patents shall issue therefor to the said bona fide purchaser, his heirs or assigns."

To come within the provisions of this section it must, among other things, be made to appear: (1) That there had been a bona fide purchase of the land from the railroad company. (2) That the land so bought was excepted from the operation of the granting act to said company. (3) These and other conditions being shown, the good-faith purchaser from the railroad company may then make payment to the United States for said lands at the ordinary government price for like lands, and thereupon patents shall issue therefor to said bona fide purchaser, his heirs, or assigns.

While the lands in controversy are within the place limits of the grant to the railroad company, and are of the odd-numbered sections therein, and are coterminous with constructed road, the answer of the defendant does not present an issue under this section; and, if it did, the proofs wholly fail to establish any right in John Wood to a patent of the lands thereunder, for the reasons: (1) That he is not a bona fide purchaser of the land from the railroad company. Such a purchase is as essential to establish a right to a patent under this section as it is under section 4; and, if one is not a good-faith purchaser under section 4, he could not upon the same facts be held to be such under section 5. This of itself would defeat the defendant's title. (2) The lands in controversy were not "excepted from the operation of the granting act of 1864" but are within the place limits of that grant, had been granted by the state to the railroad company upon the condition that it would build the road, and had been resumed by the state for the failure of the company to perform such condition. The fact that the railroad company failed to perform the condition does not except the lands from the operation of the grant within the meaning of section 5. This is apparent when it is considered that, if the railroad company had performed the condition, its title to the land would have been complete as of the date of the granting act of 1864, for they had not been sold, reserved, or otherwise disposed of when the line of railroad was definitely located; whereas, if they had been so sold or reserved by the United States, the railroad company would not have been entitled to them if it had completed the railroad within the required time. The words "for any reason excepted from the operation of the grant," as used in section 5, refer to lands within the territorial limits of such grant and thus apparently subject to its operation, but which, upon an adjustment and ascertainment of the lands actually granted, would be found to have been reserved from the operation of the grant and never to have passed from the United States. The right of the railroad company to the lands in dispute and its liability to be deprived thereof both depend upon the granting act of May 12, 1864. They are therefore subject to the operation of that grant, had reverted to the state or to the United States before the passage of the act of March 3, 1887, and section 5 of that act no more applies to such lands than would section 4. (3) The patent of the land to John Wood is not based upon section 5. He has never paid or offered to pay to the United States the government price for like land. The local land office expressly awarded the land to him under section 4 of the act of March 3, 1887. The Secretary of the Interior approved of this, and awarded a patent to him, confirming the title he obtained from the railroad company, with-

out requiring him to pay the government price for like land. In no event could a patent lawfully issue under section 5 without such payment.

The conclusion, therefore, is that the homestead application of each of the complainants was erroneously rejected, and that the land was erroneously patented to John Wood. A decree may therefore be entered requiring the defendant, Frank Wood, as sole devisee of the lands under the will of John Wood, deceased, to convey the land involved in each of these suits to the complainant therein, respectively, within a reasonable time, and quieting the title of each complainant thereto.