## McKENNA v. ATHERTON.

(Circuit Court, N. D. Iowa, W. D. April 1, 1908.)

No. 213.

1. PUBLIC LANDS—RIGHT OF ENTRY—FINDINGS OF LAND DEPARTMENT—CONCLUSIVENESS.

Facts found by the Land Department in a contest concerning the right to enter public land are conclusive on the court in a subsequent suit to recover the land from the patentee.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 41, Public Lands, §§ 301–306.

Decisions of Land Department. Their conclusiveness and effect, see notes to Hartman v. Warren, 22 C. C. A. 38; Carson City Gold & Silver Mining Co. v. North Star Mining Co., 28 C. C. A. 344; Uinta Tunnel Mining & Transportation Co. v. Mining & Milling Co., 57 C. C. A. 207.]

2. SAME—OCCUPIED LAND—RIGHT TO ENTER—RIGHTS OF PATENTEE.

Complainant entered on the northeast quarter of a section of public land in 1884, built a house and barn on the west part of the quarter, and subsequently broke and cultivated a part of the same, intending to establish his right to the entire quarter section as a homestead. He was maintaining such possession, claiming the entire quarter on March 19, 1887, when T. purchased the east one-half of the quarter from a railroad company which had no right thereto, and both T. and defendant, to whom he subsequently assigned his claim, had full knowledge at the time of his entry of complainant's possession and claim when they respectively acquired their rights under the contract of purchase. Held, that an award

of the east one-half of the quarter section to defendant by the Secretary of the Interior on the ground that defendant was a bona fide purchaser from the railroad company, and the issuance of a patent to her, was erroneous, and complainant was entitled to have defendant declared a constructive trustee of the title for him.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 41, Public Lands, § 344.]

3. SAME—FEES.

Where the fees and commissions tendered by complainant to enter certain public land as a homestead were rejected by the local land office because it was then supposed that the land was not subject to homestead entry, and complainant thereafter established his right to the land as against a patentee, complainant was only entitled to a decree for a conveyance on depositing such fees and other sums chargeable to him on the completion of his homestead entry for the use of the United States.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 41, Public Lands, § 344.]

## In Equity.

This suit was commenced July 25, 1901, to require defendant to convey to complainant the legal title to the E. ½ of the N. E. ¼ of section No. 11, Tp. 96, R. 42, in O'Brien county, this state, which it is alleged the defendant holds in trust for complainant. The land is a part of that granted by the act of Congress approved May 12, 1864, c. 84, 13 Stat. 72, to the state of Iowa, to aid in the construction of railroads in that state, and was patented to the state for the benefit of the Sioux City & St. Paul Railroad Company, but never patented to that company because of its failure to complete the road as required by the act of Congress. After the decision of the Supreme Court in Sioux City & St. Paul R. R. Co. v. United States, 159 U. S. 349, 16 Sup. Ct. 17, 40 L. Ed. 177, and following the order of the Land Department of November 18, 1895, restoring so much of said lands as were not patented to the company, to public entry, the complainant made application to the local land office to enter the northeast quarter of section No. 11, as a homestead, and tendered the requisite fees therefor. He also made application to purchase it under the act of March 3, 1887, c. 376, 24 Stat. 556 (U. S. Comp. St. 1901, p. 1595). The defendant Atherton also made application to enter the east half of the northeast quarter, the land in suit, as a homestead; also to purchase it under the act of March 3, 1887. Upon a hearing of the respective claims so presented, it appeared from the testimony before the local land office that complainant in 1883, the land being then unoccupied and unimproved, made application to enter the northeast quarter of section No. 11 as a homestead, he being then qualified to enter it as such, which application was rejected. In February, 1884, the land remaining unoccupied and unimproved complainant moved onto the northeast quarter intending to establish title to it as a homestead, built a house and barn upon the westerly part of the quarter section, and in 1884, 1885, and 1886, broke and cultivated the land to crops, 60 acres thereof being upon the east half of the quarter section. In March, 1887, C. W. Toothaker came upon the east half of the quarter section and commenced plowing on McKenna's plowing. McKenna asked him by what authority he came upon the land, and Toothaker answered that he had bought it from the railroad company and was going to hold it with McKenna's plowing. McKenna told him that he regarded the claim under the railroad company as invalid, and ordered him off the premises. After some words both withdrew, and went to cropping different parts of the land. In May, 1887, while McKenna was sowing on the east half of the northeast quarter, Toothaker came and commenced breaking thereon, and was again ordered off by McKenna. Toothaker came again in a day or two and sowed a couple of times across the field with millet seed and went away. McKenna sowed the land to flax and harvested the crop that year. Toothaker continued to harass McKenna by coming upon the land, threatening to take his crops, and to purchase the whole quarter section from the railroad company. Toothaker's claim rested upon a contract made by him with the Sioux City Railroad Company, March 19, 1887, for the

purchase of the east half of the quarter section. His interference with Mc-Kenna continued until May 17th, when they made an agreement whereby McKenna was to lease from Toothaker all of the land broken on the east half of the quarter section prior to March, 1887, Toothaker to retain possession of the entire 80-acre tract after September 17, 1887. In February, 1887, an agent of the railroad company at Sheldon, in O'Brien county, wanted McKenna to help sell the railroad lands for the company, and promised him that if he would stay at Sheldon and have nothing to do with the squatters, and try to sell the lands, he would sell to him the whole northeast quarter of the section for $1,000, if he (McKenna) would accept the offer that evening. McKenna the next morning concluded to accept the offer, but the agent then refused to sell to him because he had not accepted the evening before. Following this the sheriff began evicting settlers from the railroad lands, and, to save trouble, McKenna concluded to purchase the west half of the northeast quarter, the east half having been sold, but the agent refused to sell him that 80 acres unless he would relinquish his right to the east 80 to Toothaker, which McKenna refused to do. The agent then sent one John Harkins to McKenna to advise him to make the relinquishment, which Harkins told McKenna was in a lawyer's office at Sheldon. After an hour or more of pursuasion McKenna yielded, went to Sheldon, signed the relinquishment, and got from the agent a contract for the west half of the quarter section. Toothaker then erected a line fence between the east and west 80, thus cutting McKenna off from possession of the east half of the quarter section, and since then McKenna, to avoid trouble, has not cultivated any of his breaking on that 80. Following these transactions McKenna in July, 1887, wrote the Commissioner of the General Land Office stating in a general way the facts as above stated, and asked if by buying from the company he was barred from homesteading the land, and if the "speculator" Toothaker could compel him to give up possession of that part of the land; and whether or not he had forfeited any of his rights to any of the land by what he had done. The Commissioner replied, in substance, that if his statements were true he had forfeited none of his rights, and that in the event of the restoration of the land to public entry he, as an actual settler, would have the preference right of entry. McKenna has continued to reside on the west half of the northeast quarter since he settled there in 1884, claiming the entire quarter section as a homestead, but has not cultivated the east half of the quarter since he was barred therefrom as above stated. The defendant Atherton is the mother-in-law of Toothaker, is a widow, and has resided with Toothaker since 1883, on the northwest quarter of section No. 12, adjoining the land in suit, which he owned. June 27, 1891, Toothaker assigned his contract for the purchase of the east half of the northeast quarter to her for the expressed consideration of $1,000, upon which she claims to have paid more than $600. She has not cultivated the land or made any improvements since her purchase, but has rented it out to others. In October, 1895, she was absent visiting a sister, when she received a telegram from Toothaker to come home. She returned on October 25th, found a house on the land moved there by Toothaker in her absence from his home place, and was told by him to go on to the land and live there, which she did. For this house she says that she agreed to pay Toothaker $200, but the testimony of other witnesses is that it was a dilapidated summer kitchen, worth only $20 to $25. When she moved into the house McKenna gave her verbal notice to quit, and she said, in substance, that she wished Toothaker would send for her, that she did not know what she was kept there for. Upon this testimony the local land office rejected the claim of complainant, and awarded the east half of the northeast quarter of the section to Mrs. Atherton, under the act of March 3, 1887, as a bona fide purchaser from the railroad company. Upon appeal by complainant the Commissioner of the General Land Office on July 10, 1899, reversed the decision of the local land office and awarded the entire quarter section to the complainant under his homestead settlement and application. The defendant appealed to the Secretary of the Interior, who on March 29, 1900, approved the facts as found by the Commissioner, but reversed his decision, and awarded the east half of the quarter section to Mrs. Atherton, and the west half to the complainant, under his homestead

settlement and application. A petition for review was filed by the complainant and subsequently denied by the Land Department. Thereupon the railroad company paid to the United States $200, the government price of the east half of the northeast quarter for the defendant, and a patent was duly issued to her for said land, which price the United States have ever since retained. Thereupon this suit was brought by complainant July 25th, following the issuance of the patent to compel her to convey to him the legal title to the land so acquired and held by her.

M. B. Davis and Henderson & Fribourg, for complainant.
Wright, Call & Sargent, for defendant.

REED, District Judge (after stating the facts as above). In reversing the decision of the local land office the Commissioner of the General Land Office said of the facts:

"It is clear from the evidence in this case that McKenna has been a constant and persistent claimant for this land since 1884, and that Mr. Toothaker was at the time of the contract and long before well aware that McKenna was residing upon, cultivating, and claiming the whole of the N. E. ¼ as a homestead settler. As Mrs. Atherton was at that time living with Toothaker on the adjoining land, and continued to live with him during the years following, I cannot assume that she had no knowledge of his claim and of the differences between McKenna and Toothaker as to the right to the said E. ½ N. E. ¼. This knowledge of a prior claimant and occupant of the land as government land was sufficient to indicate to Toothaker that there was a probable defect in the title of the company, and he cannot be held to have been a bona fide purchaser under the act of March 3, 1887, c. 376, 24 Stat. 556 (U. S. Comp. St. 1901, p. 1595), and of this claim and occupancy Mrs. Atherton must also have had knowledge; and I must hold her purchase also as not bona fide. I give no account to her personal entry on the land in October, 1895, as the incidents thereof convince me it was not made in good faith, but was simply an attempt to 'hold down' the land, and she ignored this claim of homestead settlement upon the hearing of the case. I therefore overrule the award of the district officers to Mrs. Atherton, and reject her application to purchase under the act of 1887.

"The right of McKenna to enter the W. ½ N. E. ¼ being without question, the only matter remaining for consideration is his right to the E. ½ N. E. ¼ in view of his recognition, by the lease, of the right of Toothaker, and his yielding possession of said 80 acres to him. With all the circumstances surrounding this transaction and leading up to it, as shown at the hearing, I reach only the conclusion that McKenna was coerced into making that lease, and yielding the actual possession to Toothaker. * * * It was not a free will act, and he was uneasy under it, and wrote to this office to know if it would affect his homestead right to the land. I therefore conclude and decide that said lease does not affect his rights, but that he has always claimed, and constructively been in possession of said E. ½ N. E. ¼ and is entitled to include the tract in his homestead application."

The Secretary of the Interior in reviewing the decision of the Commissioner of the General Land Office, said:

"The record history and facts in the case are fully and correctly set forth in the decision appealed from and will not be here recited except in so far as is necessary for the determination of the case. * * * McKenna went upon this land in 1884, claiming the entire N. E. ¼ of said section under the settlement laws. In 1887 McKenna purchased or claims to have purchased the W. ½ of the said N. E. ¼, only to avoid trouble with the railroad company and other parties. He now claims the entire N. E. ¼ under his settlement on the same in 1884, and your office decision is based principally upon the theory that his occupancy of and settlement on the land prior to the purchase of the land by Toothaker, and also by Mrs. Atherton, defeated the right of

Mrs. Atherton to said land. McKenna's settlement on the land was long subsequent to the patenting of the same to the state of Iowa for the benefit and use of the railroad company, and under the decision of this Department in the case of Tow v. Manly, 29 Land Dec. Dep. Int. 504, decided February 16, 1900, said settlement will not defeat the right of a bona fide purchaser of the land from the railroad company to confirmatory patent, under section 4 of the act of March 3, 1887, supra. Accordingly your office action in denying Mrs. Atherton's application to confirmatory patent to the land applied for must be and is hereby reversed.

"While it appears from the testimony of McKenna that he contracted for the purchase of the W. ½ of the N. E. ¼ of said section 11, from the railroad company in 1887, and made several payments thereon, he did not offer such contract in evidence, and he appears to be relying upon his claim thereto under the homestead law, and such being the case, and it appearing that he is entitled to the said W. ½ of the N. E. ¼, his homestead application will be allowed as to that land. McKenna's homestead application as to the E. ½ of the N. E. ¼ of said section 11 is, for the reasons herein stated, rejected."

The facts so found by the Land Department are conclusive upon the court. But if they were not, there would be no hesitancy in finding the facts as the Commissioner of the General Land Office found them. From such facts it clearly appears that complainant entered upon the northeast quarter of section No. 11 in 1884, built a house and barn upon the west part of the quarter, and subsequently broke and cultivated the same and 60 acres upon the east part, intending to establish his right to the entire quarter section as a homestead under the homestead laws of the United States, and he was so in possession and claiming the entire quarter section on March 19, 1887, when Toothaker purchased the east half of the northeast quarter from the railroad company, and that both he and the defendant, his mother-in-law, had full knowledge of complainant's possession and claim when they respectively acquired their rights under the contract for its purchase. The legal conclusion of the Secretary of the Interior that the defendant Atherton is entitled to the land as a bona fide purchaser thereof from the railroad company subsequent to the Act of March 3, 1887, and while the complainant was in possession thereof, claiming it in good faith as a homestead, is contrary to the holding of the Supreme Court in Knepper v. Sands, 194 U. S. 476, 24 Sup. Ct. 744, 48 L. Ed. 1083, and of Judge Shiras in Manley v. Tow (C. C.) 110 Fed. 241, and Ostrom and Runger v. Wood (C. C.) 140 Fed. 294. The rule deducible from these authorities and Linkswiller v. Schneider (C. C.) 95 Fed. 203, is that the prior right to land, situated as this was, is in him, or her, who first enters and makes substanial improvements thereon in good faith, claiming it under some law of the United States, in ignorance of a claim or right to it by others. In accordance with that rule, and especially with the decision in Knepper v. Sands, above, it must be held in this case that it was an error of law upon the part of the Secretary of the Interior to award the land in suit to the defendant; and that she now holds the legal title thereto in trust for complainant.

It appears that the fees and commissions tendered by the complainant to enter the land as a homestead were rejected by the local land office, presumably because it was then supposed by that office that the land was not subject to homestead entry, and he has not since paid

them. The government is not a party to this suit, and will not be precluded by the decree from recovering the fees due it from complainant. The complainant, however, should pay such fees and other sums that may be due from him upon the completion of his homestead entry, and he will be required to deposit such amount with the clerk of this court within 30 days after the filing of this opinion, for the use of the United States. Upon such deposit being made, a decree may be entered requiring the defendant within 30 days thereafter to execute and deposit with the clerk for the complainant a good and sufficient · deed to him of the premises in question. It is ordered accordingly.